UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RONALD L. HUTCHINGS,           )
                               )
                    Plaintiff, )
                               )
          v.                   )          No. 4:06CV1621 TIA
                               )
MICHAEL J. ASTRUE,[1] Commissioner, )
of Social Security,            )
                               )
                    Defendant. )

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

       This cause is on appeal from an adverse ruling of the Social Security Administration.  The

parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.      Procedural History**

       On August 23, 2005, Claimant Ronald L. Hutchings filed an application for Disability

Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. (Tr.

45-47).[2]  In the Disability Report Adult completed by Claimant and filed in conjunction with the

application, Claimant stated that his disability began on August 19, 2005, due to chronic

lymphocytic leukemia.  (Tr. 55-61).  In the Disability Report Appeal, Claimant cited depression as

_____

       [1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007.
Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is
substituted for Commissioner Jo Anne Barnhart, as the proper party defendant.  See 20 C.F.R. §
422.210(d).
       [2]"Tr." refers to the page of the administrative record filed by the defendant with its Answer
(Docket No. 7/filed January 8, 2007).

a new mental limitation since he last completed a disability report. (Tr. 87). On initial

consideration, the Social Security Administration denied Claimant's claims for benefits. (Tr. 25-

27). Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 30).[3] On

February 8, 2005, a hearing was held before an ALJ. (Tr. 133-59). Claimant testified and was

represented by counsel. (Id.). Thereafter, on February 23, 2006, the ALJ issued a decision

denying Claimant's claims for benefits. (Tr. 12-21). On September 21, 2006, the Appeals

Council found no basis for changing the ALJ's decision after considering the letter from

Claimant's counsel denied Claimant's request for review of the ALJ's decision. (Tr. 3-11). The

ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II.     Evidence Before the ALJ

### A.  Hearing on February 8, 2005

#### 1.  Claimant's Testimony

At the hearing on February 8, 2005, Claimant testified in response to questions posed by

the ALJ and counsel. (Tr. 133-59). The undersigned notes at the outset of the hearing,

Claimant's counsel apprised the ALJ regarding the RFC being completed by a DDS counselor,

not a medical consultant or medical professional. (Tr. 136-37). The ALJ overruled counsel's

objection agreeing with counsel and stating that he would give appropriate weight to the Residual

Functional Capacity Assessment. (Tr. 137). At the time of the hearing, Claimant was fifty-three

years of age and his date of birth is June 30, 1952. (Tr. 137). Claimant testified that he is

divorced and lives alone in a small house. (Tr. 137-38). Claimant completed his GED while

---

[3]The undersigned notes that pages thirty through thirty-two are not included in the transcript.
In the List of Exhibits, Defendant notes that the omitted pages are the Request for Hearing by the
ALJ and Request for Hearing Acknowledgment Letter. (Tr. 1).

serving in the Navy. (Tr. 138). Claimant completed one year of junior college and then served in the Navy for four years. He received an honorable discharge in October, 1974. (Tr. 138). Claimant stands at five-feet eleven inches, weighs 175 pounds, and is ambidextrous. (Tr. 138-39). Claimant testified that he is not currently working. (Tr. 139).

Claimant testified that he was first diagnosed with leukemia three years earlier after random blood testing by Dr. Almiron, a general practitioner. (Tr. 139-40). Claimant testified that because he complained of being tired all the time and he lacked energy, Dr. Almiron ran the blood test. (Tr. 140-41). Dr. Almiron explained he would monitor until he noticed changes and then he referred Claimant to Dr. Moriconi, a blood specialist who made the diagnosis of leukemia. (Tr. 139-40). Over time, Claimant's energy level has progressively decreased, and he has a propensity to develop infections. (Tr. 141). Claimant had pneumonia in December, 2004, and missed a couple of weeks of work. (Tr. 142). When he returned to work, Claimant had no energy, and his supervisor placed him on light duty. (Tr. 143). During lunch break, Claimant would take a nap. (Tr. 144). Claimant testified that he could not climb up and down stairs. (Tr. 144). After work, Claimant would go home and take a nap until dinner. (Tr. 144).

When Claimant stopped working, he had a bronchial infection. (Tr. 141). He started falling asleep at work. (Tr. 141). Claimant testified that work was wearing him down. (Tr. 145).

At the time of the hearing, Claimant had not undergone any chemotherapy treatments. (Tr. 146). Claimant testified that Dr. Moriconi is monitoring his blood counts every four months. (Tr. 146).

As to his daily activities, Claimant testified that after he wakes up, he drinks coffee and

- 3 -

eats an English muffin. (Tr. 147). He watches television and takes a nap. If Claimant needs help, his son comes to the house. When the weather is cold, Claimant does not go outside. (Tr. 147). Claimant microwaves his meals. (Tr. 148). Claimant testified that because he is a bachelor, there is not much housework to do. Claimant does the wash and his son folds his clothes. (Tr. 148). Claimant goes over to his girlfriend's house and they watch movies. (Tr. 151). On Sundays, his son picks Claimant up to visit his grandson unless the grandson is sick. (Tr. 149). Claimant testified that he avoids being in places with sick people. He shops when there are not many people in the store to protect himself from germs. (Tr. 149-50). Claimant testified that he is susceptible to catching any virus. (Tr. 151). Claimant can walk two hundred yards before he has to sit and rest because of fatigue. (Tr. 156). Claimant testified that he can stand for thirty minutes and can sit for an hour or two. (Tr. 157).

A month before the hearing, Dr. Almiron diagnosed Claimant with an upper respiratory infection and prescribed an antibiotic as treatment. (Tr. 152). Dr. Almiron instructed Claimant to call his office whenever he sneezes or coughs because his immune system is shot. (Tr. 152). Claimant testified that he usually has respiratory infections. (Tr. 155). Since being diagnosed with leukemia, Claimant has been sick every six months. (Tr. 156). Dr. Almiron also warned Claimant to be careful about the weather conditions. (Tr. 156).

### 2. Forms Completed by Claimant

In the Disability Report Adult, Claimant reported that his injuries limited his ability to work because he tires easily. (Tr. 55-61). Claimant worked as a carpenter from 1990 though August 19, 2005. (Tr. 57).

In the Function Report Adult completed on August 31, 2005, Claimant reported no

problems with his personal care. (Tr. 67). Claimant indicated that he cleans the house, does the laundry, and operates a weed eater. (Tr. 68). Claimant indicated that he shops once or twice a week. (Tr. 69). Claimant listed going to restaurants and barbeques and visiting his grandson as his social activities. (Tr. 70). Because of his fatigue and lack of energy, Claimant cannot walk or climb steps. (Tr. 71).

## III.    Medical Records

Dr. Osias Almiron, a general practitioner, first treated Claimant on January 14, 2001, for shoulder pain. (Tr. 120). In a follow-up visit on March 14, 2001, Dr. Almiron prescribed Celebrex for Claimant's continued shoulder pain. (Tr. 120). In March and May, 2002, Dr. Almiron refilled Claimant's medications. (Tr. 120). On July 24, 2002, Claimant returned for treatment of his shoulder. (Tr. 119). On July 31, 2002, Dr. Almiron repeated Claimant's fasting blood work. (Tr. 119). On June 4, 2003, Claimant returned to Dr. Almiron's office for blood work. (Tr. 119). In a follow-up visit on August 15, 2003, Claimant returned to discuss his blood work results and reported pain from an accident two days earlier. (Tr. 118). In a follow-up visit in August, 2003, Claimant reported improvement with his lower back pain, and Dr. Almiron continued his prescribed medications. (Tr. 118). Dr. Almiron refilled Claimant's prescriptions on October 24, 2003. (Tr. 117).

In an office visit on December 2, 2003, Claimant reported having a sore throat and no energy to Dr. Almiron. (Tr. 120). Dr. Almiron diagnosed Claimant with bronchitis and prescribed medication as treatment. On July 28, 2004, Claimant returned for follow-up blood work. (Tr. 117).

In a letter dated September 1, 2004, Dr. William Moriconi apprised Dr. Almiron of his

recent evaluation of Claimant's persistent leukocytosis. (Tr. 109). Dr. Moriconi noted that he

had sent peripheral blood for flow cytometry. (Tr. 109). In a follow-up letter on September 8,

2004, Dr. Moriconi opined that the peripheral blood confirmed that Claimant has chronic

lymphocytic leukemia, and at that time, no treatment is indicated. (Tr. 107). Dr. Moriconi noted

that he would see Claimant in three months. (Tr. 107).

In a follow-up visit on December 1, 2004, Dr. Moriconi noted that clinically Claimant

continues to do well. (Tr. 105). Dr. Moriconi reported that Claimant's hemoglobin is 14.4 with a

white count of 24, 200 and platelets of 343,000. Because Claimant is asymptomatic, Dr.

Moriconi determined no treatment is indicated. Claimant would return for follow-up treatment in

four months. (Tr. 105).

On December 15, 2004, Claimant reported having a cold and chest congestion. (Tr. 116).

Dr. Almiron diagnosed Claimant with bronchitis and pneumonia and prescribed medication. (Tr.

116). Claimant returned on December 22, 2004, for follow-up treatment for bronchitis with Dr.

Almiron. (Tr. 115). On January 29, 2005, Claimant complained of a cold and a cough and Dr.

Almiron prescribed medications. (Tr. 115).

In a return visit on April 6, 2005, Dr. Moriconi reported that Claimant remains

asymptomatic and thus no treatment is indicated. (Tr. 103). Dr. Moriconi would see Claimant in

four months. (Tr. 103).

In an office visit on August 5, 2005, Claimant reported feeling better to Dr. Almiron. (Tr.

115).

On August 10, 2005, Dr. Moriconi reported that Claimant's hemoglobin is 15.8, with a

white count of 34,700 and platelets of 315,000. (Tr. 101). Dr. Moriconi noted no treatment to

be indicated and indicated that he would see Claimant in four months. (Tr. 101). Examination revealed a chronic cough. (Tr. 102).

On August 15, 2005, Claimant complained of a sore throat and Dr. Almiron prescribed Cephalexin, Albuterol, and Prednisone as treatment. (Tr. 114, 131).

In the Physical Residual Functional Capacity Assessment completed on September 23, 2005, Joetta Snell, a disability determinations counselor, listed chronic lymphocytic leukemia ("CLL") as Claimant's primary diagnosis and obesity and COPD/bronchitis as secondary diagnosis. (Tr. 76). Ms. Snell noted that a treating or examining source statement regarding Claimant's physical capacities is not in the file. (Tr. 82). Ms. Snell indicated that Claimant's exertional limitations included that Claimant could occasionally lift twenty pounds; could frequently lift ten pounds; could stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and was unlimited in use of lower and upper extremities to push and/or pull. (Tr. 77). Claimant had no postural, manipulative, visual, communicative, or environmental limitations as noted by Ms. Snell. (Tr. 78-80). Based on a review of the medical records, Ms. Snell opined that Claimant's complaints of fatigue and lack of energy are credible inasmuch as these are reasonable symptoms of CLL. Ms. Snell determined that Claimant can still perform at least the work as outlined in the instant RFC. (Tr. 78).

In a "To whom this may concern" letter dated December 5, 2005, Dr. Almiron opined as follows:

> The above named patient is currently being treated for chronic lymphocytic leukemia with an Oncologist, Dr. W. Moriconi. In December of 2004 Mr. Hutchings was treated for pneumonia and bronchitis and then again in July and August of 2005 he was treated for bronchitis that lasted approximately 7 weeks. Because of his current condition of CLL his immune system is severely

compromised and he needs take precautions due to weather conditions and contact with other people.

(Tr. 128).

In a "To whom this may concern" letter dated December 12, 2005, Dr. Moriconi opined as follows:

> Mr. Hutchings has been diagnosed with chronic lymphocytic leukemia. He has a history of an elevated white blood cell count for over three years. This type of cancer is incurable. He has been under my care for the last 16 months. His leukemia is active and is slow progression. No treatment is indicated at this time. However, I will continue to monitor his blood work until his condition reaches the point where chemotherapy will be needed to slow the progress of his cancer. Mr. Hutchings is aware that, with his condition, he is very vulnerable to various infections.

(Tr. 129).

The Department of Veterans Affairs, St. Louis Regional Office issued a decision on January 3, 2006, finding Claimant entitled to service-connection for chronic lymphocytic leukemia ("CLL") with a 100% evaluation effective August 11, 2005, the receipt date of the claim by the VA. (Tr. 93-96). In the Reasons for Decision, the VA set forth the following:

> You have claimed this condition, [CLL], secondary to exposure to herbicides while serving in Vietnam. A review of your 201 personnel files indicates[*sic*] 03-01-72 you were assigned to NAVSUPPFAC, DANANG. As of 09-01-72 you are noted to be again assigned to the USS H.W. Gilmore. Exposure to herbicides is conceded. As of 10-16-03 this is a condition which VA recognizes as due to exposure to herbicides.

> ***

> Service connection may be granted for specific diseases or conditions which are presumed to have been caused by service if manifested to a compensable degree following military discharge. Although not shown in service, service connection for chronic lymphocytic leukemia (CLL) has been granted on the basis of presumption.

(Tr. 94).

On January 23, 2006, Dr. Almiron treated Claimant for cough, congestion, and nasal drainage. (Tr. 130-31). Dr. Almiron prescribed Biaxin and Histonex. (Tr. 130-31).

## IV.    The ALJ's Decision

The ALJ found that Claimant met the disability insured status requirements on August 19, 2005, the date Claimant alleged he became unable to work, and remains insured through December 31, 2009. (Tr. 20). The ALJ found that Claimant has not engaged in substantial gainful activity since August 19, 2005, the alleged onset date of disability. The ALJ found that the medical evidence establishes that Claimant has severe chronic lymphocytic leukemia Claimant's impairment does not singly, or in combination, meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 20).

In response to counsel's argument that Claimant would not be able to sustain an eight-hour work day five days a week because of Claimant's history of frequent illnesses would not be tolerated by an employer, the ALJ noted that his illnesses did not require emergency room treatment or hospitalization. (Tr. 18).

The ALJ further found that Claimant's allegations and testimony of symptoms precluding a wide range of light work are not fully credible because they are not fully supported by, or consistent with, the substantial medical and other evidence in the record. (Tr. 20). The ALJ found that Claimant has the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for lifting and carrying more than twenty pounds occasionally and ten pounds frequently and working in extreme cold or crowded places. The ALJ opined that Claimant is unable to perform his past relevant work as a carpenter. The ALJ noted

that Claimant's residual functional capacity for the full range of light work is reduced by the need to avoid working in extreme cold or crowded places. (Tr. 20).

The ALJ noted that Claimant is an individual closely approaching advanced age with a high school education and one year of college. (Tr. 20). Claimant does not have any acquired work skills which are transferable to the skilled or semiskilled work functions of other work. Considering Claimant's capacity for a wide range of light work, his age, education, and work experience, the ALJ opined that Claimant is not disabled. (Tr. 30). The ALJ further opined that Claimant's capacity for light work has not been significantly compromised by his nonexertional limitations, and thus the Claimant is not disabled. The ALJ thus concluded that Claimant was not under a disability at any time through the date of his decision. (Tr. 30).

## V.     Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough

that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the claimant's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

In the Disability Report Appeal, Claimant cited depression as a new mental limitation since he last completed a disability report. Cf. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (fact that claimant did not allege depression on benefits application is significant even if evidence of depression was later developed). "[A]n ALJ is not obligated 'to investigate a claim not

presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (quoting Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996)); see also Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003) (mere fact that a claimant has been prescribed antidepressants on at least one occasion is not enough to require the ALJ to inquire further into the condition by ordering a psychological evaluation). At the hearing, Claimant did not provide any testimony regarding depression or how depression impairs his concentration, persistence, or pace or causes him to deteriorate in work or work like settings. The ALJ noted Claimant has neither received any psychiatric or psychological nor been hospitalized for depression or a nervous condition. Moreover, the ALJ found such complaints have not impaired Claimant's social functioning or daily activities. Indeed, the medical record is devoid of any support. The record not only fails to contain substantial evidence to support such a claim, it contains virtually no evidence in support. The ALJ is under "no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996) (quoting Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993)). Accordingly, this claim is without merit.

       Claimant argues that the ALJ's determination of his RFC is not supported by substantial evidence on the record as a whole, because the record does not contain any medical assessment of how his chronic lymphocytic leukemia affects his ability to engage in sustained work activity by a treating or examining physician, or even by a non-treating, non-examining physician. Claimant further argues that the ALJ's decision is not supported by substantial evidence on the record as a whole because the ALJ failed to properly assess Claimant's credibility. Next, Claimant contends

that the ALJ erred in failing to elicit testimony from a vocational expert inasmuch as he has significant fatigue.

The undersigned may reject the ALJ's decision only if it is not supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is that which "a reasonable mind might accept as adequate" to support the Commissioner's conclusion. Smith v. Shalala, 987 F.2d 1371, 1373 (8th Cir. 1993); see Flynn v. Astrue, 513 F.3d 788, 792 (8th Cir. 2008) (standard of review; substantial evidence is enough that reasonable mind might accept it as adequate to support decision). The Court may not substitute its own judgment or findings of fact when reviewing the record for substantial evidence. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

A.      Residual Functional Capacity

Claimant argues that the ALJ's determination of his RFC is not supported by substantial evidence on the record as a whole, because the record does not contain any medical assessment of how his chronic lymphocytic leukemia affects his ability to engage in sustained work activity by a treating or examining physician, or even by a non-treating, non-examining physician.

Although the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000), a claimant's residual functional capacity is ultimately a medical question that must find at least some support in the medical evidence of record. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Some medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace. Dykes v. Apfel, 223 F.3d 466, 469

(8th Cir. 2000); <u>Nevland v. Apfel</u>, 204 F.3d 853, 858 (8th Cir. 2000). In evaluating a claimant's RFC, the ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a professional. <u>See</u> 20 C.F.R. § 404.1545(c); *See* <u>Baldwin v. Barnhart</u>, 349 F.3d 549, 556 (8th Cir. 2003) (it is claimant's burden to prove RFC; ALJ is responsible for assessing RFC based on medical records, observations of treating physicians and others, and claimant's own description of his limitations). The ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. <u>Hildebrand v. Barnhart</u>, 302 F.3d 836, 838 (8th Cir. 2002).

When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments and determine the Claimant's RFC. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001). "The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence." <u>Harris v. Barnhart</u>, 356 F.3d 926, 929 (8th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."). It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC. <u>Pearsall</u>, 274 F.3d at 1218. The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and Claimant's own descriptions of his limitations. <u>Id.</u> Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. 20 C.F.R. §§ 416.927(e)(2), 416.946.

The ALJ "may not draw upon his own inferences from medical reports." <u>Lund v</u>

Weinberger, 520 F.2d 782, 785 (8th Cir. 1975). "If the ALJ did not believe, moreover, that the professional opinions available to him were sufficient to allow him to form an opinion, he should have further developed the record to determine, based on substantial evidence, the degree to which [the claimant's] mental impairments limited his ability to engage in work-related activities. Lauer, 245 F.3d at 706 (citing Nevland, 204 F.3d at 858; 20 C.F.R. § 404.1519a(b)).

When determining Claimant's RFC, the ALJ was required to consider his own description of his limitations. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004). There is not much medical evidence in the record that corroborates Claimant's fatigue, but there is evidence that Claimant has been diagnosed with chronic lymphocytic leukemia and fatigue.

Claimant contended that he is disabled by fatigue caused by the acute lymphocytic leukemia. The ALJ determined two important aspects of Claimant's RFC: that his chronic lymphocytic leukemia did not significantly limit Claimant's ability to function in the workplace and that Claimant is restricted from working in extreme cold and crowded places as determined by his treating physicians. The record is not devoid of any medical evidence supporting this assessment, because neither Claimant's treating physicians nor a consultative physician offered any opinions regarding Claimant's physical condition and how his chronic lymphocytic leukemia affects his ability to engage in sustained work activity. Indeed, Dr. Moriconi characterized Claimant's condition as stable or slowly progressing. Contrary to Claimant's argument, the ALJ based the RFC primarily on his treating doctor's findings and did not adopt the findings of the disability determinations counselor who placed fewer limitations than the ALJ did. In summary, because the ALJ incorporated parts of the findings of Drs. Moriconi and Almiron, considered the medical evidence, and properly discounted Claimant's subjective complaints, the ALJ's RFC findings are

supported by substantial evidence . *See* <u>Stormo v. Barnhart</u>, 377 F.3d 801, 807 (8th Cir. 2004) (in determining RFC, ALJ must consider medical records, observations of treating physicians and others, and Claimant's description of her limitations).

The ALJ's RFC determination with respect to the work-related effects of Claimant's chronic lymphocytic leukemia was sufficiently supported by the evidence. The ALJ acknowledged that fatigue and lack of energy are reasonable symptoms of chronic lymphocytic leukemia. Nonetheless, the ALJ did not fully credit Claimant's complaints of fatigue and lack of energy noting that Claimant never reported fatigue to either treating physician and his daily activities are not consistent with fatigue and lack of energy.[4] Indeed, the medical evidence supports the ALJ's decision. <u>E.g.</u>, <u>Goff v. Barnhart</u>, 421 F.3d 785, 791 (8th Cir. 2005) (holding that an ALJ is not required to seek additional clarifying medical evidence unless a crucial issue is undeveloped). According to Claimant's activities of daily living report, Claimant reported no problems with personal care and prepared meals daily. Claimant cleaned, completed laundry and other household maintenance including weed eating. Further, Claimant could drive, do his own shopping, watch television at his girlfriend's house, and use the computer. Claimant listed going to restaurants and barbeques and visiting his grandson and friends as his social activities. The ALJ based these determinations not only on the medical records but on Claimant's daily activities,

---

[4]The ALJ did not fully credit Claimant's complaints of fatigue and lack of energy, both reasonable symptoms of chronic lymphocytic leukemia, noting that Claimant never reported complaints of these symptoms to either treating physician. The undersigned notes that the record shows that on one occasion., during the December 2, 2003, office visit, Claimant reported having no energy to Dr. Almiron who diagnosed him Claimant with bronchitis and prescribed medication as treatment. However, the undersigned finds that this misstatement is not material enough to detract from the finding that substantial evidence in the record supports the ALJ's decision.

the absence of medical opinions finding Claimant disabled or unable to engage in work activity, and the absence of functional limitations by any medical source.

To the extent that Claimant argues that the ALJ somehow failed to fully develop the record, the undersigned finds this contention to be without merit. The ALJ has a duty to develop the facts fairly and fully. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994); Driggins v. Harris, 657 F.2d 187, 188 (8th Cir. 1981). "There is no bright line test for determining when the [Commissioner] has ... failed to develop the record. The determination in each case must be made on a case by case basis." Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994) (internal quotation marks and citations omitted); Highfill v. Bowen, 832 F.2d 112, 115 (8th Cir. 1987) (although mere lack of counsel does not in itself deprive claimant of fair hearing, it does enhance ALJ's duty to bring out relevant facts, but absent unfairness or prejudice, court will not remand for further proceedings). "'Unfairness or prejudice resulting from an incomplete record -- whether because of lack of counsel or lack of diligence on the ALJ's part -- requires a remand.'" Id. at 45 n.2 (quoting Highfill, 832 F.2d at 115). The relevant inquiry, however, is whether the claimant was prejudiced or treated unfairly by how the ALJ did or did not develop the record. Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993). "[A]bsent unfairness or prejudice, we will not remand." Id.; see also Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). Inasmuch as Claimant has failed to show unfairness or prejudice, the undersigned rejects this argument. Likewise, Claimant's contention that the ALJ's determination finding Claimant capable of light work activity does not take into account that his immune system is severely compromised is without merit. The medical evidence corroborates the RFC and includes the only limitations imposed by any doctors. The medical evidence is silent with regard to work-related restrictions

beyond the restrictions imposed by the ALJ. Accordingly, the undersigned finds that the medical evidence supports the ALJ's decision, and Claimant's argument must fail. E.g., Goff, 421 F.3d at 791 (holding that an ALJ is not required to seek additional clarifying medical evidence unless a crucial issue is undeveloped).

The ALJ determined that Claimant had the RFC to perform a wide range of light work[3] restricted by Claimant's "need to avoid working in extreme cold and crowded places." (Tr. 19). The ALJ opined that "there is nothing wrong with the claimant which would prevent standing, walking, and sitting throughout a work day, occasionally lifting up to twenty pounds and frequently lifting up to ten pounds." (Tr. 19). Because Claimant is limited to light work, the ALJ found that Claimant could not perform his past relevant work as a carpenter as this work involved heavy lifting. The Eighth Circuit has "consistently held that the test of whether a person can perform light work is whether a complainant can perform this work on a sustained, continuing day-in, day-out basis. The residual functional capacity of a claimant 'is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1992)).

Claimant contends that the ALJ should have considered the VA determination that

_____

[3]20 C.F.R. § 404.1567(b) provides: Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Claimant is permanently and totally disabled, and his terse, one sentence explanation to be

somehow deficient.[4]  Claimant cites no authority in support of his contention that a finding by the

VA that a person is 100% disabled is analogous to a finding by the Social Security Administration

that a person is totally disabled nor can the undersigned find such authority.  A VA disability

determination is not controlling.  Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir. 1998) (VA

disability rating is not binding on ALJ considering application for Social Security disability

benefits, but it must be considered); 20 C.F.R. §§ 404.1502, 416.904 (a decision by another

governmental agency concerning an individual's disability is based upon its own rules and is not

binding upon the Social Security Administration).  Accordingly, a VA's determination does not

provide a basis for establishing disability within the meaning of the Social Security Act.  A review

of the record shows that the ALJ considered the VA's disability finding and gave little, if any,

weight to the finding.  The undersigned notes that the record contains scant information about the

VA determination beyond the four-page rating decision issued on January 3, 2006.  In the VA

determination, the VA's determined disability based on the presumption that Claimant's CLL may

have been caused by Claimant's exposure to herbicides during his service.  A disability

determination by the VA is based on its rules and not those of the Social Security Administration.

See 20 C.F. R. § 404.1504.  In view of the lack of evidence and the service connection

_____

[4]In relevant part, the ALJ opined as follows:

> The evidence also reveals that the Department of Veterans Affairs has found 100
> percent service connection for chronic lymphocytic leukemia.  It is noted that this
> decision was made for the purpose of determining the claimant's eligibility for
> veteran's benefits, not in the context of full and total disability under the Social
> Security Rules.

(Tr. 19).

presumption applied by the VA, the ALJ's failure to accord any weight to the VA's determination was arguably inconsequential. Accordingly, this claim is without merit.

B.      Credibility Determination

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole because the ALJ failed to properly assess Claimant's credibility.

The determination of claimant's credibility is for the Commissioner, and not the Court, to decide. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). The ALJ may not discredit claimant's complaints of pain solely because they are unsupported by objective medical evidence. Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). Instead, the ALJ must also consider all of the evidence relating to the claimant's relevant work history, the absence of objective medical evidence to support the complaints, and third party observations as to:

1.      claimant's daily activities;

2.      duration, frequency and intensity of the pain/condition;

3.      dosage, effectiveness, and side effects of medication;

4.      precipitating and aggravating factors; and

5.      functional restrictions.

Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (stating factors from Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).

The undersigned recognizes that pain itself may be disabling. See Loving v. Department of Health & Human Servs., 16 F.3d 967, 970 (8th Cir. 1994). However, "the mere fact that working may cause pain or discomfort does not mandate a finding of disability." Jones, 86 F.3d

at 826. While there is no doubt that claimant experiences pain, the more important question is how severe the pain is. Gowell, 242 F.3d at 796; Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

When determining a claimant's complaints of pain, the ALJ may disbelieve such complaints if there are inconsistencies in the evidence as a whole. Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989). "[A]n ALJ must do more than rely on the mere invocation of *Polaski*" to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). Where an ALJ explicitly considers the Polaski factors but then discredits a claimant's complaints for good reason, his decision should be upheld. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); see also Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). The ALJ's credibility findings are entitled to deference. See Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, court will normally defer to credibility determination).

In his decision the ALJ thoroughly discussed the medical evidence of record, the lack of functional restrictions imposed by the treating physicians, his daily activities, his ability to work

three years with CLL, and the testimony adduced at the hearing.  See Gray v. Apfel, 192 F.3d

799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain

based on discrepancy between complaints and medical evidence, inconsistent statements, lack of

pain medications, and extensive daily activities).  The lack of objective medical basis to support

claimant's subjective descriptions is an important factor the ALJ should consider when evaluating

those complaints.  See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995) (lack of objective

findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38

F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective

medical basis to support claimant's subjective complaints was an important factor in evaluating

the credibility of her testimony and of her complaints).  The ALJ then addressed several

inconsistencies in the record to support his conclusion that Claimant's complaints of constant

fatigue were not credible.

Specifically, the ALJ noted that no treating physician stated that Claimant was

disabled or unable to work.  See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant

that no examining physician submitted medical conclusion that claimant is disabled or unable to

work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987)

(examining physician's failure to find disability a factor in discrediting subjective complaints).  In

addition, the ALJ noted that no physician had ever made any medically necessary restrictions,

restrictions on his daily activities, or functional or physical limitations except for the restrictions

included in the RFC.  Indeed, the ALJ noted Claimant's good work record and how he continued

to work for three years after his CLL diagnosis.  Absent a showing of deterioration, working after

the onset of an impairment is some evidence of an ability to work.  See Goff v. Barnhart, 421 F.3d

785, 793 (8th Cir. 2005); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested his impairments were not as severe as he alleged). Likewise, the medical record is devoid of any evidence showing that claimant's condition had deteriorated, required aggressive medical treatment, or precluded him from working in the past although Claimant testified otherwise at the hearing. Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain). See Id.; Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent statements as a factor to consider in determining claimant's credibility). Further, the ALJ noted how Claimant is able to engage in household chores and activities. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("The ALJ may discount subjective complaints of physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence.").

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility. See Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, the courts normally defer to his credibility determination). The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). Further, the ALJ pointed out other inconsistencies in the record that tended to militate against Claimant's credibility. See Samons v. Astrue, 497 F.3d 813, 818 (8th Cir. 2007) (finding that substantial evidence supported the ALJ's decision where there were too many inconsistencies in the case). Those included Claimant's testimony at the hearing, the absence of objective medical evidence of

deterioration, the absence of any doctor finding Claimant disabled or imposing any functional

limitations, his lack of work restrictions except for the ones incorporated in the RFC, his daily

activities, and his ability to work three years after the CLL diagnosis.  The ALJ's credibility

determination is supported by substantial evidence on the record as a whole, and thus the Court is

bound by the ALJ's determination.  Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).

Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints.  Accordingly,

this claim is without merit.

C.    Medical-Vocational Guidelines

Claimant contends that the ALJ erred in failing to elicit testimony from a vocational expert

inasmuch as he has significant fatigue.

The Commissioner's burden to show that there exists jobs in the national economy that the

claimant is capable of performing may be met by reference to the Medical-Vocational Guidelines

("Guidelines") if the claimant suffers only from exertional impairments.  Bolton v. Bowen, 814

F.2d 536, 537 n.3 (8th Cir. 1987).  Use of the Guidelines is also permissible where non-exertional

impairments exist but "do not diminish or significantly limit the claimant's residual functional

capacity to perform the full range of Guideline-listed activities [.]"  Ellis v. Barnhart, 392 F.3d

988, 996 (8th Cir. 2005).  Where a non-exertional impairment significantly diminishes the

claimant's RFC, the Guidelines are not controlling and the ALJ must call a vocational expert or

produce other similar evidence to establish that there are jobs available in the national economy

for a person with the claimant's abilities.  Id.; Shannon v. Chater, 54 F.3d 484, 488 (8th Cir.

1995).  The Eighth Circuit has provided some guidance in applying this standard:

In this context "significant" refers to whether the claimant's non-exertional

impairment or impairments preclude the claimant from engaging in the full range of activities listed in the Guidelines under the demands of day-to-day life. Under this standard isolated occurrences will not preclude the use of the Guidelines, however persistent non-exertional impairments which prevent the claimant from engaging in the full range of activities listed in the Guidelines will preclude the use of the Guidelines to direct a conclusion of disabled or not disabled. For example, an isolated headache or temporary disability will not preclude the use of the Guidelines whereas persistent migraine headaches may be sufficient to require more than the Guidelines to sustain the [Commissioner's] burden.

Thompson v. Bowen, 850 F.2d 346, 350 (8th Cir. 1988).

Claimant here claims that the ALJ's failure to properly evaluate the evidence resulted in the failure to include all of his functional limitations. There is not much medical evidence in the record that corroborates Claimant's fatigue, but there is evidence that Claimant has been diagnosed with chronic lymphocytic leukemia and fatigue, and fatigue is a reasonable symptom. As discussed supra, however, the ALJ properly evaluated all the evidence of record and accorded it weight it was due including Claimant's fatigue. Upon review of the credited evidence, the ALJ determined that to the extent Claimant suffered non-exertional limitations, such limitations did not significantly compromise the range of exertional work activity that Claimant can perform. Where an ALJ properly discredits non-exertional impairments, the use of the Guidelines is permissible. See Patrick v. Barnhart, 323 F.3d 592, 596 (8th Cir. 2003). As such, the ALJ did not err by failing to call a vocational expert in this cause. Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the final decision of

the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.

                                              /s/ Terry I. Adelman
                                       UNITED STATES MAGISTRATE JUDGE

Dated this  29th day of September, 2008.